UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DEMONT COSTON,

       Plaintiff,

v.

ANDREW M. SAUL, COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,[1]

       Defendant.

**DECISION AND ORDER**

1:18-CV-00251(JJM)

---

    This is an action brought pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of defendant Andrew M. Saul, the Commissioner of Social Security, that plaintiff was not entitled to Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI"). Before the court are the parties' cross-motions for judgment on the pleadings [16, 21].[2] The parties have consented to my jurisdiction [24]. Having reviewed the parties' submissions [16, 21, 22], the Commissioner's motion is granted, and plaintiff's motion is denied.

**BACKGROUND**

    The parties' familiarity with the 2,496-page administrative record is presumed. In August 2014 plaintiff, who was 46 years old, applied for DIB alleging a disability onset date of October 1, 2012 due to seizures, knee pain, irregular heartbeat, and melanoma. Administrative

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security, and is automatically substituted as the named defendant. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

[2] Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

record [9-5], pp. 159-60; [9-6], p. 187. That application was denied on October 9, 2014. [9-4], p. 82. Plaintiff subsequently applied for SSI on February 4, 2016, also using October 1, 2012 as his onset date. [9-5], p. 166. An administrative hearing was conducted before Administrative Law Judge ("ALJ") Brian LeCours on March 27, 2017 at which plaintiff, who was represented by counsel, and a vocational expert testified. [9-2], pp. 28-61; [9-4], pp. 82-85.

In his May 3, 2017 decision, ALJ LeCours determined that plaintiff's severe impairments were seizure disorder and osteoarthritis of both knees, but that his atrial fibrillation was non-severe. [9-2], p. 17. He also considered listings 1.00 (disorders of the spine) and 11.00 (neurological disorders) of Appendix 1, Subpart P, but concluded that the specific requirements of those listings were not met. Id., p. 18. Based on the record before him, ALJ LeCours concluded that plaintiff had the residual functional capacity ("RFC") to perform light work, except that he can never "climb ladders, ropes and scaffolds; and he must avoid concentrated exposure to hazardous conditions such as unprotected heights and dangerous machinery [though he is currently allowed to drive occasionally]". Id.

There were no consultative examinations of plaintiff performed, and the only opinion evidence was from plaintiff's treating neurologist, Shankar Perumal, M.D., who treated him when he resided in North Carolina prior to relocating to Buffalo in 2014. Id., pp. 35, 39. In reaching his RFC, ALJ LeCours gave "little weight" to the June 2014 opinion of Dr. Perumal that plaintiff was unable to work because of his seizures. [9-2], pp. 19-20; [9-7], p. 275. ALJ LeCours noted that the "evaluation of [plaintiff's] seizure condition is severely limited by his persistent failure to follow prescribed treatment". [9-2], p. 20. Although plaintiff testified that he had been compliant with his seizure medications (id., pp. 35-36), ALJ LeCours found that his testimony was "contradicted by the longitudinal medical evidence". Id.

With respect to plaintiff's knee impairment, ALJ LeCours explained that "an April 2014 x-ray of [plaintiff's] left knee revealed arthritic changes without acute fracture or dislocation . . . . The only other reference to his knee impairment is in July 2014 . . . . While the evidence does support a finding of some limitation, the [plaintiff] has not generally received the type of medical treatment one would expect for a totally disabled individual". Id., p. 20.

In concluding that plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence", ALJ LeCours further explained that plaintiff's "job searching belied [his] allegations of severe and disabling symptoms". Id., pp. 19-20. Based upon plaintiff's RFC to perform light work and the testimony of the vocational expert, ALJ LeCours concluded that plaintiff was capable of performing his past relevant work as a routing clerk, and that there were otherwise significant jobs in the national economy that he was able to perform, including cafeteria attendant, inspector/hand packer, and mail clerk. Id., pp. 20-22. Therefore, he denied plaintiff's applications for DIB and SSI. Id., p. 22. The Appeals Council denied plaintiff's request for review ([9-1], pp. 1-4), and thereafter he commenced this action.

## ANALYSIS

**A.    Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as

adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

It is well settled that an adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B. Did ALJ LeCours Err by Rejecting the Opinion of Plaintiff's Treating Neurologist Shankar Perumal, M.D.?**

By letter dated June 24, 2014, Dr. Perumal stated that plaintiff "continues to have seizures a few times a month despite taking 2 seizure medications . . . . Current[ly] he cannot work because he continues to have seizures". [9-7], p. 275. ALJ LeCours gave that opinion "little weight" because plaintiff "was not compliant with medications" at that time, and "[t]he record indicates that [he] continued to experience seizures due to non-compliance". [9-2], p. 20. He also provided a summary of the records demonstrating plaintiff's non-compliance. Id., p. 19.

Plaintiff argues that in rejecting Dr. Perumal's opinion, ALJ LeCours improperly substituted his own lay opinion and "failed to obtain clarification and [a] functional assessment from" Dr. Perumal. Plaintiff's Memorandum of Law [16-1], pp. 20-21. In response, the Commissioner argues that ALJ LeCours provided good reasons for discounting Dr. Perumal's opinion. Commissioner's Brief [21-1], p. 14.

Under the treating physician rule, the ALJ must give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §404.1527(c)(2). An ALJ may discount a treating physician's opinion if

-4-

it does not meet this standard, but must "comprehensively set forth reasons for the weight assigned to a treating physician's opinion". Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004); see also 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion").[3]

As ALJ LeCours found, and Dr. Perumal's treatment records demonstrate, plaintiff's seizures were attributable to his non-compliance with his prescribed medications. For example, Dr. Perumal's June 24, 2014 treatment record ([9-7], p. 264) - the same day he opined that plaintiff was unable to work - stated that "[g]etting medication is an issue". Id. According to that treatment record, plaintiff himself stated that he "has seizures when he runs out of medication and he is stressed" (id.), and the level of Depakote (one of his anti-seizure medications) in his system was "undetectable". Id., p. 265.[4] When plaintiff returned to Dr. Perumal on September 15, 2014, it was noted that his Dilantin levels (the other anti-seizure medicine he was taking) were "chronically low". Id., p. 461. He informed Dr. Perumal that "at times he cannot get to the pharmacy to get his medications". Id.

On September 15, 2014, plaintiff was continued on Depakote, but his Dilantin was replaced with Keppra. Id., p. 471. Dr. Perumal discussed with plaintiff "the importance of compliance with medications", and noted that he "needs close follow-up". Id. Shortly after plaintiff moved to Buffalo, he was treated at the Buffalo General Hospital Emergency

---

[3] "The Social Security Administration adopted regulations in March 2017 that effectively abolished the treating physician rule; however, it did so only for claims filed on or after March 27, 2017." Montes v. Commissioner of Social Security, 2019 WL 1258897, *2 n. 4. (S.D.N.Y. 2019).

[4] There are also a number of references to plaintiff's non-compliance with his seizure medications prior to June 2014. See, e.g., [9-10], p. 1666 (September 12, 2012 - patient "is not taking his Vimpat, which is his second seizure medication"); [9-7], p. 268 (May 24, 2013 - plaintiff's failure to take "Topamax as advised could be playing a significant role in his poor seizure control"); id., p. 266 (July 8, 2013 - "poor adherence to treatment [is a] major obstacle to [plaintiff's] poor seizure control"); id., p. 374 (February 9, 2014 - "patient . . . notes that he is not taking Depakote and Dilantin regularly").

Department on January 25, 2015 for complaints of seizure activity. Id., p. 573. At that time, it was noted that he had not taken his medications the previous two days because he was locked out of his house, had "suboptimal depakote level", and was advised to "take his medications as prescribed". Id., pp. 573, 577. On March 24, 2015, he was again treated at the Emergency Department for a seizure, and it was noted that the Neurology Department felt that his "seizures were most likely secondary to medication noncompliance, given low Depakote level". Id., p. 485. On May 9, 2015, plaintiff returned to the Emergency Department because of a seizure. Id., p. 565. The treatment notes from that visit stated that plaintiff "is supposed to be on Keppra and Depakote, although [he] is *very clearly noncompliant*. He has not Depakote pills at present, and his Keppra was filled in March, and has about half of the 30 day supply missing at this point in early May". Id. (emphasis added). See also p. 566 ("[t]he patient is clearly noncompliant despite his suggestion otherwise"). He next returned to the Emergency Department on July 20, 2015 with a seizure and he "admitted noncompliance". Id., p. 550. See also p. 551 ("noncompliance medications on Depakote and Keppra").

There is no indication that plaintiff's non-compliance with his medications was involuntary (*e.g.*, - due to a lack of insurance). See [9-7], pp. 553 ("patient stated that he does have his medications at home and does not require refill"), 570. Nor is there any evidence that he continued to have seizures after July 2015. See Id., p. 545. In fact, plaintiff acknowledged that he had suffered no seizures since that time, and that he had been able to drive with his medications since 2016. [9-2], pp. 36, 37. See Reices-Colon v. Astrue, 523 Fed. App'x 796, 799 (2d Cir. 2013) (Summary Order) (the ALJ properly considered treatment notes indicating symptom improvement with treatment in denying disability application).[5] Based on this record, I

---

[5] According to plaintiff, it was a change in the dose of his medications in mid-2015 that resulted in the cessation of his seizures. [9-2], p. 36. However, that is not borne out by the treatment records.

conclude that ALJ LeCours gave good reasons for giving little weight to Dr. Perumal's opinion, and did not err by failing to re-contact him.

C.     **Did ALJ LeCours Properly Formulate Plaintiff's RFC?**

Plaintiff argues that ALJ LeCours impermissibly rendered a lay judgment about his functional capacity without obtaining functional assessments from his treatment providers or a consultative examiner. Plaintiff's Memorandum of Law [16-1], pp. 23-25. The Commissioner responds that ALJ LeCours "properly considered the entire record and based his findings on a variety of evidence, including treatment notes and Plaintiff's own testimony", which "was consistent with the ability to perform a range of light work". Commissioner's Brief [21-1], p. 16.

"[I]t is not *per se* error for an ALJ to make the RFC determination absent a medical opinion, and remand is not necessary where 'the record contains sufficient evidence from which an ALJ can assess the [plaintiff]'s residual functional capacity.'" Williams v. Colvin, 2016 WL 2640349, *3 (W.D.N.Y. 2016) (*quoting* Tankisi v. Commissioner of Social Security, 521 Fed. App'x 29, 34 (2d Cir. 2013) (Summary Order)). Hence, "[t]here is no error where, as here, an ALJ bases his RFC on Plaintiff's own testimony." Scouten v. Colvin, 2016 WL 2640350, *4 (W.D.N.Y. 2016) (citing cases).

"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, one must have ability to do

substantially all of these activities, and stand or walk, off and on, for a total of approximately six hours of an eight-hour workday." Kinslow v. Colvin, 2014 WL 788793, *2 (N.D.N.Y. 2014).

Plaintiff's *own* testimony established that he was capable to performing the full range of light work. When asked what conditions prevented him from working, plaintiff testified, "just mostly the seizures", but also noted that he had a "bad knee" and headaches caused by stress. Id., p. 35. However, as discussed above, plaintiff testified that he did not have a seizure since 2015, and his prior seizures appear attributable to his failure to take his prescribed medications. Id. p. 36.

By plaintiff's own admission, he suffered headaches only once or twice every two or three months when he avoided stress. Id., pp. 40-41. He also testified that his last migraine lasted about three hours and was relieved by aspirin. Id., p. 43. With respect to his knee, plaintiff testified that he had no difficulties walking, sitting, bending, stooping, crouching. Id., pp. 46-47. While he testified that he was able to stand for 15-20 minutes without pain, he testified that he had received no treatment for his knee between 2012 and February 2017, that the shots for his knee "worked good", and that he was able to walk two miles. Id., pp. 44-46.

Further demonstrating plaintiff's ability to perform light work, he testified that he worked out one or twice a week, and was able to curl 40 pounds. Id., p. 47. Plaintiff described his memory and focus as "great". Id. While plaintiff testified that he slept "terribl[y]", when asked if he felt fatigued, he responded "only . . . any time after 6:00, 7:00 when you're winding down because when I first wake . . . I take my morning medicine and my afternoon medicine. That's the way to keep me up. To keep me full of energy". Id., p. 48. However, he testified that he had no other side effects from his medications. Id. ("[n]o . . . not at all"). He also

acknowledged that he had no trouble with daily chores or taking care of himself. Id., pp. 49-50. Therefore, I conclude that ALJ LeCours did not err in formulating plaintiff's RFC.

### D. Did ALJ LeCours Err at Steps Two and Three?

Plaintiff argues that ALJ LeCours "did not include and consider evidence directly related to [his] impairments like: degenerative knee and neck disorders, confusion, migraines, .intractable seizure, [high blood pressure], [atrial fibrillation], and mental disorders [*e.g*, - unspecified psychosis ([9-7], p. 342), adjustment disorder (id., pp. 410, 417), and mood disorder (id., pp. 417, 786-87)] in the step Two and three assessment (and subsequent sequential steps), and therefore failed to properly consider the combined effects of Plaintiff's impairments under Subpart P, Appendix 1." Plaintiff's Memorandum of Law [16-1], pp. 24 n. 47, 25. In response, the Commissioner argues that ALJ LeCours considered all of plaintiff's symptoms in determining his RFC. Commissioner's Brief [21-1], p. 9. He contends that "[a]lthough Plaintiff now lists a number of additional diagnoses, the 'mere diagnosis' of a condition, 'without a finding as to the severity of symptoms and limitations,' did 'not mandate a finding of disability.'" Id. He further argues that plaintiff "presents no evidence of impairment related-findings that are at least of equal medical significance to either of the listings considered by the ALJ." Id., p. 10.

"The regulations provide that the ALJ is to consider the combined effects of all of a claimant's impairments without regard to whether any one impairment, if considered separately, would be of sufficient severity to be the basis of eligibility under the law. *See* 20 C.F.R. § 404.1523; 20 C.F.R. § 416.923. If the claimant is found to have a medically severe combination of impairments, the combined impact of those impairments will be considered

throughout the disability determination process." Quiles v. Colvin, 2015 WL 13729877, *11 (D. Conn. 2015), report and recommendation adopted, 2016 WL 543102 (D. Conn. 2016).

"It is quite clear from the regulations that 'severity' is determined by the limitations imposed by an impairment, and not merely by its diagnosis." Wahrmann v. Commissioner of Social Security, 2014 WL 4626487, *5 (N.D.N.Y. 2014). "The Second Circuit has held that an argument that an ALJ should have found an impairment severe is 'without merit' when the claimant 'did not furnish the ALJ with any medical evidence showing how these alleged impairments limited his ability to work.'" Quiles, 2015 WL 13729877 at *11.

Although plaintiff had other diagnosed impairments than those addressed by ALJ LeCours at step two, "[t]he decision reflects that the ALJ evaluated all of the limitations identified by [plaintiff], irrespective of whether he associated those impairments with a particular diagnosis. [Plaintiff] has failed to identify any symptom or limitation that was not considered by the ALJ". Newell v. Colvin, 2016 WL 4524809, *13 (W.D.N.Y. 2016). The fact that plaintiff was diagnosed with other physical and mental impairments does not render the step two severity analysis and subsequent steps flawed where, as here, there is no evidence that these impairments resulted in additional limitations. *See* Quiles, 2015 WL 13729877 at *12 ("[w]ith respect to major depressive disorder . . . there is evidence in the record that Plaintiff has a history of depression and anxiety, but no evidence that it results in functional limitations . . . . Plaintiff has failed to show that her migraine headaches result in functional limitations. Instead, the evidence shows that Plaintiff's CT scan was normal and her headaches were alleviated with Tylenol. The Court concludes that Plaintiff's diagnoses and past history of these conditions, alone, are not sufficient to support a finding of severity"). Plaintiff's own testimony established that they did not. *See* Taylor v. Commissioner of Social Security, 2015 WL 4649820, *6 (N.D.N.Y. 2015)

("none of Taylor's primary care providers opined that Taylor's anxiety and depression significantly limited her mental ability to perform basic work activities. Nor did Taylor provide subjective evidence specifically addressing her inability to meet basic mental demands of work. Absence of medical or subjective evidence addressing this issue means that she failed to meet her Step 2 burden in any event").

By plaintiff's own admission, he suffered headaches only once or twice every two or three months when he avoided stress, and his last migraine was resolved with aspirin [9-2], pp. 41, 43.[6] To the extent that plaintiff testified that stress was the trigger for his headaches (id., p. 35 ("if I don't get stressed out, I don't have headaches")), any error by ALJ LeCours to include a stress limitation in plaintiff's RFC was harmless, since "[i]t is well settled that the positions identified by the vocational expert, including mail clerk . . . are unskilled jobs that are suitable for claimants with limitations to 'low-stress' work". Cowley v. Berryhill, 312 F. Supp. 3d 381, 384–85 (W.D.N.Y. 2018). *See also* Martinez v. Commissioner of Social Security, 2017 WL 2633532, *7 (N.D.N.Y. 2017) ("the Second Circuit has held that moderate limitations in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work"); Newell, 2016 WL 4524809 at *15 (the ALJ's "assessment that Newell suffered from moderate limitations in her ability to complete several work-related functions [was not] inconsistent with his ultimate conclusion that she retained the ability to perform unskilled work").

I also find no error in ALJ LeCours' determination that plaintiff's impairments did not meet a Listing. Plaintiff argues that ALJ LeCours "improperly disregarded Dr. Perumal's opinion he had seizures despite compliance". Plaintiff's Memorandum of Law [16-1], p. 27. For

---

[6] The vocational expert testified that employers will allow up to one absence per month. [9-2], p. 58.

the reasons discussed above, I conclude that there was no error in ALJ LeCours' decision to afford less than controlling weight to Dr. Perumal's opinion. Plaintiff having pointed to no other error in ALJ LeCours' step three determination, I find no grounds for remand.

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [21] is granted, and plaintiff's motion [16] is denied.

**SO ORDERED**.

Dated: September 11, 2019

   /s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge